**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

ELISABETH DUNCAN,

      Plaintiff,

v.            CIVIL ACTION NO.  5:10-cv-01049
             (consolidated w/ 5:10-cv-01113)

JP MORGAN CHASE BANK, N.A.,

       Defendant.


**MEMORANDUM OPINION AND ORDER**


   Plaintiffs, Richard and Elisabeth Duncan, bring this action pursuant to the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code §§ 46A-1-101, *et seq*., against Defendant J.P. Morgan Chase Bank USA, N.A. ("Chase") for Defendant's allegedly unlawful and tortious actions in attempting to collect a debt from Plaintiffs through the use of multiple telephone calls and mail forwarded by the United States Postal Service to their residence.

   The Court has reviewed *Defendant Chase Bank USA, N.A.'s Motion for Summary Judgment* ("Def.'s Mot.") (Document 33).  Upon consideration of the motion, memoranda in support thereof and in opposition thereto (Documents 34, 39, 40), attached exhibits, and the entire record, the Court, for the reasons stated herein, finds that Defendant's motion should be denied.

*I.*

On November 6, 2006, Richard J. Duncan purchased a new 2006 Chrysler Town and Country Van from Joe Holland Chevrolet in South Charleston, West Virginia. (*See* Def.'s Ex. A., Retail Installment Contract and Security Agreement). The contract for the purchase of the vehicle was later assigned to Chase.  (*Id.*)  During the summer of 2007, Mr. Duncan fell in arrearage with respect to  payments for the vehicle.  At some point thereafter, Defendant began engaging in collection efforts through the use of telephone calls and the United States Mail.  (Compl. (Document 1-1), ¶ 5.)  In September 2009, Plaintiffs began advising Chase to discontinue using the auto-dialer to call their home and to contact them only through the mail.  On December 16, 2009, Plaintiffs sent a letter to the Defendant to request that they not be contacted by telephone regarding their account. However, Defendant continued to call them. (Def.'s Ex. D., Plaintiffs' Responses to Defendant JPMorgan Chase Bank, N.A.'s First Set of Interrogatories and Requests for Production ("Pl.'s Resp.") (Document 33-1), ¶ 1; Def.'s Ex. C., Account Log (Document 35-5), at 3.)  Thereafter, Plaintiffs retained an attorney "to represent [their] interest  in connection with consumer indebtedness on which [they] had become in arrears."  (Richard Duncan Complaint (Civil Action No. 5:10-cv-01113) (Document 1-1), ¶ 6; Elisabeth Duncan Complaint (Civil Action No. 5:10-cv-01049) (Document  1-1), ¶ 6.)  On May 14, 2010, Elisabeth Duncan called Defendant to make a payment and  provided Defendant with their attorney's name and telephone number.  (Account Log at 3.)  One day later, Defendant called Plaintiffs' attorney.  However, the attorney could not tell Defendant whether he had a paid retainer from Plaintiffs or if they were planning to file bankruptcy. Eight days later, Defendant called Plaintiffs at home and on a cell phone about an insufficient funds event in their account.  One of the Plaintiffs said further research would be done and hung up.

2

Thereafter, Plaintiffs complained to Defendant's Executive Office that their "cease and desist" request with respect to telephone calls was not adhered to. Defendant continued to contact Plaintiffs and their attorney. However, Plaintiffs' account was never restored to good standing and on July 21, 2010, Chase facilitated the repossession of the vehicle. Account Log at 1.

On July 22, 2010, Elisabeth Duncan initiated a civil action in the Circuit Court of Raleigh County, West Virginia. On August 9, 2010, Richard Duncan filed an identical lawsuit in the Circuit Court of Raleigh County. (Elisabeth Duncan Complaint (Civil Action No. 5:10-cv-01049) (Document 1-1), ¶ 6; Richard Duncan Complaint (Civil Action No. 5:10-cv-01113) (Document 1-1)). In their Complaints, Plaintiffs allege that Defendant engaged in repeated violations of the WVCCPA by: (a) engaging in unreasonable, oppressive or abusive conduct by placing telephone calls to their residence in violation of Section 46A-2-125; (b) "causing [their] phone to ring or engaging persons, including the Plaintiffs, in telephone conversations repeatedly or continuously or at unusual times or at time known to be inconvenient, with the intent to annoy, abuse or oppress the Plaintiffs, in violation of Section 46A-2-125(d); (c) using unfair or unconscionable means to collect a debt in violation of Section 46A-2-128(e) by communicating with them after it appeared that they were represented by an attorney and the attorney's name and address were known or could be easily ascertained; and (d) failing to clearly disclose the name of the business entity making a demand for money upon their indebtedness in violation of Section 46A-2-127 (a) and (c). (Compl. ¶ 12.) In Counts Two through Four, Plaintiffs assert claims for common law negligence, intentional infliction of emotional distress ("I.I.E.D.") and common law invasion of privacy, respectively. (*Id.*,

¶¶ 14-26.)[1]     Defendant removed the cases to this Court on August 26, 2010, and September 15, 2010, alleging that this Court had jurisdiction pursuant to 28 U.S.C. § 1332.[2]   Plaintiffs did not challenge the removal. Pursuant to this Court's scheduling order and upon the completion of discovery, Defendant timely filed the instant dispositive motion.

## II.

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986).  Rule 56 of the Federal Rules of Civil Procedure requires that,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

---

[1]   Plaintiffs seek actual damages for the past and future violations of the WVCCPA, statutory damages in the maximum amount authorized by WV Code § 46A-5-106, costs of litigation, general damages for past and future negligence, as well as, general and punitive damages for past and future conduct as alleged in their claims for intentional infliction of emotional distress and invasion of privacy.

[2]   On October 6, 2010, the Court entered the parties' Agreed Order (Document No. 8), which dismissed with prejudice Counts I, II, and III of the Complaint filed in *Elisabeth Duncan v. JPMorgan Chase Bank, N.A.*, Civil Action No. 5:10-cv-1049, and consolidated that civil action with that of *Richard Duncan v. JP Morgan Chase Bank, N.A.*, Civil Action No. 5:10-cv-1113, pursuant to Fed.R.Civ.P 42(a).  Civil Action 5:10-cv-1049 was designated as the lead case.

party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. (c)(1).   A "material fact" is a fact that might affect the outcome of a party's case.   *See Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).   A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.   *Id.*

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.   *Celotex*, 477 U.S. at 322-23.   In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.   Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).   However, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.   Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, an evidentiary showing sufficient to establish that element.   *Celotex*, 477 U.S. at 322-23.   If the nonmoving party fails to make a showing sufficient to establish the existence of an essential element, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.   If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate.   *Anderson*, 477 U.S. at 250.

*III.*

Defendant moves for summary judgment as to each of Plaintiffs' claims.  In opposition, Richard Duncan withdrew his common law claim of negligence and I.I.E.D, as well as, all claims asserted pursuant to WV Code 46A-2-127 and 128(e).  Consequently, Plaintiff Richard Duncan maintains only one WVCCPA statutory claim, that is, he alleges that Defendant violated Section 2-125(d).  Additionally, both Plaintiffs Richard and Elisabeth maintain their invasion of privacy claims.  The Court will consider each claim in turn.

*(A) The Oppression and Abuse Provision (Section 46A-2-125(d))*

"The WVCCPA is a 'comprehensive consumer protection' law that incorporates elements of the Uniform Consumer Credit Code, the National Consumer Act, and older West Virginia statutes." *Countryman v. NCO Financial System, Inc*., Civil Action No. 5:09-cv-0288, 2009 WL 1506720, at *2 (S. D.W. Va. 2009) (Johnston, J.) (quoting *Cadillac v. Tuscarora Land Co.,* 412 S.E.2d 792, 794 (W.Va.1991)).[3]  It places "restrictions on the manner in which debt collectors may attempt to collect debts."  (*Id*.)   Plaintiff Richard Duncan alleges that Defendant's attempts to collect on the debt of his vehicle violated Section 46A-2-125(d), which proscribes "unreasonably" oppressive and abusive  behavior.   Section 46A-2-125, the Oppression and Abuse Provision, provides, in relevant part, that:

> No debt collector shall unreasonably oppress or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another. Without

---

[3]   The parties do not dispute that Plaintiff Richard Duncan is a "consumer" as that term is defined by 46A-2-122(a) as "any natural person obligated or allegedly obligated to pay any debt[,]" and that Defendant is a "debt collector" as defined by 46A-2-122(d), which provides that a debt collector is "any person or organization engaging directly or indirectly in debt collection." Section 46A-2-122(c) defines "debt collection" as "any action conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due by a consumer."

limiting the general application of the foregoing, the following conduct is deemed to violate this section:

(d) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number.

W. Va. Code, § 46A-2-125(d).   The Supreme Court of Appeals of West Virginia has indicated that

the WVCCPA is to be construed broadly:

> The purpose of the [WVCCPA] is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action.  As suggested by the court in *State v. Custom Pools*, 150 Vt. 533, 536, 556 A.2d 72, 74 (1988), "[i]t must be our primary objective to give meaning and effect to this legislative purpose."  Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended.

*State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 461 S.E.2d 516, 523 (W. Va. 1995)

(internal citations omitted).

Defendant seeks summary judgment by arguing that Plaintiff's claim is flawed because he

has no evidence that Chase acted with the requisite *intent* to annoy, abuse, oppress, or threaten him

or any person at the called number.  Plaintiff confronts this assertion by arguing that Defendant's

own records "reflect that Defendant placed more than 100 collection calls to Plaintiffs prior to filing

their civil actions in state court on July 22, 2010 (Elisabeth Duncan) and August 9, 2010 (Richard

Duncan.)"  (Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Pls.' Oppn.")

(Document 39) at 2.)  According to Plaintiff, the requisite "intent" can "be inferred from the shear

[sic] number of collector calls placed to Plaintiffs" and by the fact that Plaintiffs asked Defendant

to "cease and desist making collection calls to them."  (*Id*. at 2-3.)  In reply, Defendant asserts that

it did not place more than 100 collection calls to Mr. Duncan, but that it placed a total of sixty-eight (68) attempted calls on his account over an eleven (11) month period (between August 28, 2009 and June 29, 2010).  Defendant maintains that the presentment of the essential element of "intent" must be demonstrated with something more than just placing calls and that this Court found as much in its decision in *Clements v. HSBC Auto Finance, Inc.*, Civil Action No. 5:09-cv-0086, 2011 WL 2976588 (S.D. W. Va. July 21, 2011).

The Court declines Defendant's invitation to find that "something more" or a "volume plus" type of analysis is required to demonstrate a violation of Section 2-125(d) in every case.  The plain language of the statute aptly sets forth that a statutory violation can be bourne from the mere volume of calls placed to a debtor.  This is so, based on the statute's reference to calls which are repeated[] or "continuous[.]"  Placed in the proper context, the volume of calls made to a debtor can be demonstrative of an intent to annoy, abuse or oppress, where, as in this case, those calls were repeated after Plaintiffs advised Defendant that they wished only to be contacted in writing, desired to have the autodialer to stop placing calls to their phones or that future communications were to be with their attorney.  Although, a Court can glean "intent" from the continuous nature of the calls by highlighting a distinctive pattern, such as the number of calls placed in one day, or the time in which those calls were placed, these factors are not required in every case.  The nature of the violations at issue in these types of claims is fact-intensive and a court must be cautious to view each alleged violation on a case-by-case basis.[4]  Therefore, Plaintiff has made the requisite showing to

---

[4] Consequently, Defendant's reliance on *Clements* is not entirely effective. In *Clements*, debtors financed the purchase of a SUV and within months of the purchase began to experience difficulty in making the required payments. The debtors sought to work out a payment plan with the creditor in an effort to catch up on late payments; however, their efforts were unsuccessful.  But the evidence demonstrated that within a seven month time span, the creditor placed over 821 calls to the debtor's home and cell phones.  This Court found "in light of the totality of the evidence in [that] case"

(continued...)

demonstrate a genuine dispute of material fact with respect to the issue of the Defendant's intent, given  the number of calls which were repeatedly placed to his telephones.  Further, the evidence before the Court also indicates that abusive language was used in at least one of the calls placed to Plaintiffs. In her deposition testimony, Plaintiff Elisabeth Duncan recalled a conversation with one of Defendant's employees, Renee, regarding Richard Duncan's debt.  Elisabeth Duncan testified that Renee called her "stupid" and told her that "she was not talking right."  (Def.'s Ex. F, Deposition of Elisabeth Duncan (Document 33-3) at 15.)  She also testified that she "could hear people in the background laughing and carrying on[.]" (*Id*.)  Again, based on the foregoing, and giving  all reasonable inferences to the non-moving party, the Court finds that there is a genuine dispute of material fact as to the existence of the requisite "intent" to satisfy a Section 2-125(d) claim.   As a result, the Court finds that Defendant is not entitled to summary judgment.

### (B) Invasion of Privacy

Plaintiffs, in Count Four of their separate Complaints, allege that Defendant intruded upon their seclusion by continuously placing telephone calls to them, causing them to suffer emotional distress, and to become "annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise caused indignation and distress."  (Compls., ¶¶ 23-26.)

The Supreme Court of Appeals of West Virginia has adopted four types of invasion of privacy claims as enumerated in the Restatement (Second) of Torts, §§ 652A-652E (1977).

---

[4](...continued)

that the volume and frequency of the calls placed to the debtors was sufficient to demonstrate the requisite "intent" element of this statute, particularly in light of the "aggressiveness" of that creditor, the creditor's failure to seek other remedial measures, and  to contact the debtors' attorney.  A defendant's lack of such aggression does not automatically preclude a court from finding that the volume of calls made to a debtor alone can, in some cases, serve the purposes of demonstrating the intent of the caller.

Invasion of privacy claims can arise by: (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life or by (4) publicity that unreasonably places another in a false light before the public. *O'Dell v. Stegall* 703 S.E.2d 561, 594 (W. Va. 2010) (citing *Crump v. Beckley Newspapers, Inc.,* 320 S.E.2d 70 (1984)). There appears to be no dispute that Plaintiffs' allegations fall within the ambit of the first type of invasion of privacy claim. An "[u]nreasonable intrusion upon another's seclusion occurs when '[o]ne ... intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or [his or her] private affairs or concerns, . . . if the intrusion would be *highly offensive to a reasonable person*.'" *Harbolt v. Steel of West Virginia, Inc.* 640 F.Supp.2d 803, 817 (S.D. W. Va. 2009) (quoting Restatement (Second) of Torts § 652B) (emphasis supplied).

With the applicable law in mind, the Court finds that Defendant is not entitled to summary judgment as to these claims. Defendant argues that Plaintiffs' invasion of privacy claims are defeated because: 1) Plaintiffs provided their telephone number to Chase, and Chase is entitled to communicate with Plaintiff Richard Duncan regarding that debt;[5] 2) there is no liability for intrusion upon seclusion where the intrusion was not into a private place, and in this case, both Plaintiffs testified at their deposition that they received some of the calls on their cell phones while they were away from their home; and 3) Plaintiffs continuously contacted Chase to request information on their account, even though they were represented by counsel, and that Plaintiffs can not maintain this cause of action where Chase attempted to respond to their requests. Finally, Defendant argues

---

[5] Neither party makes any argument respecting whether Defendant was entitled to communicate with Plaintiff Elisabeth Duncan, who was not listed on the retail contract which is the subject of the debt or whether she consented to the calls. Therefore, the Court will not address this issue and will assume for the purposes of this decision that Plaintiff Elisabeth Duncan was in the same position as Plaintiff Richard Duncan as to this claim.

10

that the "right to privacy" does not extend to those communications which have been consented to by the Plaintiffs.

The Court finds that Defendant's assertions are without merit.  There is no dispute that Plaintiffs provided Defendant with their telephone numbers. While the number of calls Defendant placed to Plaintiffs is in dispute–both after they advised defendant that they no longer desired debt collection communication via telephone and after they advised that they were represented by an attorney–there is no dispute that Defendant did, in fact, repeatedly call Plaintiffs.  By Defendant's own admission, at least sixty-eight (68) calls were made in eleven (11) months with respect to the debt.  These calls were placed both to the Plaintiffs' home and cell phones.  Defendant's contention that it is entitled to communicate with Richard Duncan regarding the debt, and that such communications were consented to, is not entirely misplaced.  Consent is a defense to an invasion of privacy claim. *Crump*, 320 S.E.2d at 83.  However, that defense is not absolute.  "[A]s with any other qualified privilege, conduct in excess of that consented to is not protected."  (*Id*. at 84.) Consequently, the defense can be lost through, abuse, excess or actual malice.  (*Id*. at 83) (discussing when the "public figure" privilege defense to an invasion of privacy claim can be lost.)  It is on this point that Plaintiffs argue that providing a creditor with their phone number does not give that creditor "license . . . to place [sic] telephone calls to Plaintiffs in less than four months" in the instance where "Plaintiffs made it clear that they were bother [sic] unable to pay and that they wanted Defendant to communicate with them through their lawyer."  (Pls.' Oppn. at 3.)  The Court agrees with the Plaintiffs.  Permitting unfettered communications solely because a debtor provided contact information with a creditor would conflict with the goals of securing to a person the right to be free from unreasonable intrusions and with the purposes of the WVCCPA. Therefore, an

assertion that an individual waives a right to privacy by the mere placement of contact information on a credit application or provides a creditor with a telephone contact number is without merit.

Defendant also argues that Plaintiffs' invasion of privacy claims are flawed because they received calls outside the confines of their homes. Plaintiffs argue that they "have an expectation of privacy to be free of annoying collection calls, wherever they may happen to be when Defendant places such an illegal call." (Pls.' Oppn. at 4.) The Court finds Defendant's assertion incredible. There is no dispute that Defendant had both Plaintiffs' home telephone number and cell phone number. Indeed, Defendant used them all. To now argue that the calls to Plaintiffs' cell phone numbers cannot support an invasion of privacy claim because those calls were received outside the home is disingenuous. Technology and advances in science now allow individuals to make and receive calls on-the-go and in places in which the conventional land-line telephone would not permit. Defendant has cited no authority for the proposition that the Plaintiffs' receipt of its telephone calls while they were in their car, and outside their homes, should chip away at this long-established "right to be let alone" in their private affairs.

Likewise, notwithstanding the fact that Plaintiffs initiated contact with Defendant after disclosing that they were represented by counsel, Defendant is not relieved of its statutory responsibility under the WVCCPA to cease communicating with a debtor after it appears that the debtor is represented by counsel. Defendant, in its reply, identifies four instances in June 2010 in which Plaintiffs initiated contact with Chase. In three of those instances, Plaintiffs made a specific written inquiry about the debt. In the other one, the contact was verbal. Defendant indicates that a response to Plaintiffs' inquiries in these instances would have been proper because Plaintiff consented to a response. The Court does not completely disagree. Inasmuch as a response was

12

required to Plaintiffs' written inquiry, Defendant could have relayed its response to Plaintiffs' attorney either verbally or in writing since it was free to communicate with their attorney via letter or telephone.  Common sense must dictate that if Plaintiffs inquired orally of the Defendant with respect to the debt during this time period, Defendant was within its right to respond contemporaneously with that inquiry.  Responding to a customer question is not the crux of this claim.  Instead, it is the repeated or continuous placing of telephone calls to Plaintiffs, after they have declined to accept those calls, which is at issue.  In that vein, the protection extended to a plaintiff for the right of privacy does not extend to the supersensitive, but only to persons of ordinary or reasonable sensibilities. (*Crump*, 320 S.E.2d at 84.) (citations omitted). Defendant maintains that its actions were reasonable in its attempts to collect on the debt. The Court finds that the determination of whether a Defendant's actions would be *highly offensive to a reasonable person* is subject to a jury determination, where, as here, the evidence indicates that the calls were made after Plaintiffs asked to only be contacted in writing, requested that the auto-dialer not be used to dial their home and eventually advised Defendant that they were represented by counsel with respect to the debt.   Therefore, the Court finds that a genuine dispute of  material fact exists which precludes summary judgment against Plaintiffs on these claims.[6]

*IV.*

Based on the foregoing, the Court does hereby **ORDER** that *Defendant Chase Bank USA, N.A.'s Motion for Summary Judgment* ("Def.'s Mot.") (Document 33). be **DENIED**.

---

[6]  Based on the foregoing, the Court finds that a ruling on Plaintiffs' assertion that Defendant's conduct violated state criminal statutes is not necessary.

13

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:          November 4, 2011

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA